T.C. Memo. 2011-234

UNITED STATES TAX COURT

HENRICUS C. AND PAMELA VAN DER LEE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19804-08.               Filed September 29, 2011.

Leon J. Greenspan, for petitioners.

Frederick C. Mutter, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency of

$620,235 in petitioners' Federal income tax and an accuracy-

related penalty under section 6662(a)[1] of $7,624 for 2002.  After

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), as amended and in effect for
the year at issue, and all Rule references are to the Tax Court
                                        (continued...)

concessions,[2] the issues for decision are: (1) Whether petitioner husband Henricus C. van der Lee (Mr. van der Lee) was a trader in securities during 2002; (2) whether losses attributable to Mr. van der Lee's purchases and sales of securities are deductible against petitioners' ordinary income; (3) whether petitioners are entitled to deduct certain charitable contributions; and (4) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 2002.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioners resided in New York when they filed their petition.

## I. Securities Transactions

Mr. van der Lee holds an undergraduate degree from Rollins College and a master of business administration degree from Duke University. By 2002 Mr. van der Lee had acquired substantial

---

[1](...continued)
Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

[2]Petitioners concede that the $17,550 of tuition paid to the Tuxedo Park School, an independent school, is not deductible as a charitable contribution. The parties stipulated that petitioners are entitled to deduct investment interest of $29,023 rather than $12,493. Because respondent allowed the additional interest deduction in the notice of deficiency, we do not construe this stipulation as respondent's further concession.

trading experience during his career[3] as a trader at investment banks Morgan Stanley, Goldman Sachs, and Merrill Lynch. He traded mostly mortgage-backed securities, U.S. Treasury bonds, interest rate swaps, and commodities and also was involved in credit and foreign exchange trading. Because of industry regulations, before 2002 Mr. van der Lee was prohibited from trading securities for his own account.

In the first quarter of 2002 Mr. van der Lee's career at Merrill Lynch was coming to an end, and later in 2002 he formally left his employer. Starting with the second quarter of 2002 he stopped spending a significant amount of time at Merrill Lynch, and after the first quarter of 2002, many of the trading restrictions were lifted. After April 15, 2002, Mr. van der Lee decided to start trading for his own account.[4]

Mr. van der Lee conducted most of his trading activities from home using an account with Merrill Lynch, through which he traded stocks and options. Between April 15 and December 31,

---

[3]Petitioners state in the petition that Mr. van der Lee had been employed as a securities trader for over 12 years, but Mr. van der Lee testified that he had worked as a securities trader for 15 years by 2002.

[4]Before starting the trading, Mr. van der Lee asked petitioners' return preparer, Jerome Camiola (Mr. Camiola), to look into rules regarding trading. Mr. Camiola researched the rules and in late April 2002 conveyed the results of his research to Mr. van der Lee.

2002, his trading activity in the Merrill Lynch account was as follows:

| Month | No. of transactions |
|-------|---------------------|
| April | 4 |
| May | 25 |
| June | 29 |
| July | 6 |
| August | 8 |
| September | 7 |
| October | 13 |
| November | 15 |
| December | 41 |
| Total | 148 |

Of the 148 transactions, Mr. van der Lee executed 30 sales and purchases of stock pursuant to options that he had written or acquired.[5]  Mr. van der Lee never sold any stock on the day he acquired it.

Mr. van der Lee also had an account with Prudential Bache (Prudential) through which he traded options and futures. Between April 15 and December 31, 2002, Mr. van der Lee executed 11 trades through the Prudential account.  Mr. van der Lee's trading activity in the Prudential account was as follows:

---

[5]The table does not include the 30 option transactions because their dates are unclear.  See infra pp. 14-15 note 7.

| Month | Trading days | No. of transactions |
|-------|------------|---------------------|
| April | 0 | 0 |
| May | 0 | 0 |
| June | 0 | 0 |
| July | 0 | 0 |
| August | 0 | 0 |
| September | 1 | 5 |
| October | 4 | 4 |
| November | 1 | 1 |
| December | 1 | 1 |
| Total | 7 | 11 |

At the end of 2002 Mr. van der Lee realized that even with sophisticated communication devices that allowed him to monitor securities prices, he did not have sufficient information to trade successfully.  Consequently, he decided to concentrate on purchasing and selling securities as an investor.

II. Charitable Contributions

During 2002, in addition to her employment, petitioner wife Pamela van der Lee (Mrs. van der Lee) became a consultant pro bono to nonprofit organizations.  She was a board member for the Rollins College Alumni Association (alumni association), the National Down Syndrome Society (NDSS), and the Tuxedo Park School.  She provided her expertise in marketing and strategic planning, for example by making presentations on soliciting donors.  To carry out her charitable work, in 2002 Mrs. van der Lee established a home office "with a computer, with telephones, with fax machines, with copiers, all of that".  She also incurred expenses for taxicabs, copying, office supplies, travel, and courting donors.

Mrs. van der Lee traveled extensively for the charities, and her travel was either expected or required. She traveled to attend national conferences for NDSS and quarterly meetings, dinners, and other fundraising events for the alumni association. Mrs. van der Lee also traveled to Washington, D.C., for meetings on strategic planning for the alumni association and the NDSS. She did not seek reimbursement of her expenses from the charitable organizations.

During 2002 petitioners owned a 3-week timeshare interest in a residence at the Ritz Carlton in St. Thomas (Caribbean residence). In 2002 they donated a 1-week use of the Caribbean residence to NDSS, which raised money by auctioning a vacation at the Caribbean residence at a fundraising gala.

Around 2002 petitioners renovated the kitchen in their home. In 2002 they donated their used range to the Tuxedo Park School and other used kitchen appliances, cabinets, faucets, and similar items to Hudson Valley Materials Exchange. Hudson Valley Materials Exchange is an environmental section 501(c)(3) organization that focuses on waste management and distributes collected items to school districts.

III. <u>Procedural History</u>

A. <u>Return Positions</u>

Mr. Camiola has prepared petitioners' returns since the late 1980s, including the 2002 Federal income tax return. Mr. Camiola

received a degree in history in 1976, and after working as an accountant, in 1985 he started his own business as a return preparer. Mr. Camiola gives his clients guidelines but does not examine receipts. Mr. van der Lee provided Mr. Camiola with totals by category of all receipts.

Petitioners signed the 2002 return and filed it as married taxpayers filing jointly. The taxable year 2002 was the first and only year for which Mr. van der Lee claimed to be a trader. Petitioners attached a Schedule C, Profit or Loss From Business, to the 2002 return. On the Schedule C petitioners reported gross receipts from the securities trading activity of $3,710,378. To calculate this amount, Mr. Camiola totaled all gross proceeds using petitioners' brokerage statements. Petitioners reported $5,098,705 as the cost of goods sold, which equaled their total bases in those securities. According to the Schedule C, petitioners' loss was $1,388,327. On the Schedule C petitioners also reported expenses totaling $91,872 as follows:

| Expense | Amount |
| --- | --- |
| Legal and professional services | $750 |
| Office expense | 34,313 |
| Travel | 26,726 |
| Meals and entertainment | 16,695 |
| Utilities | 13,388 |
| Total | 91,872 |

Petitioners offset the net loss on Schedule C of $1,480,199 against their wages.

Petitioners did not attach to their 2001 or 2002 return a statement making the mark-to-market election or a Form 3115, Application for Change in Accounting Method.  Petitioners did not report on their 2002 return any unrealized profit or loss from securities held at the close of 2002.

With respect to the reporting of charitable contributions, Mr. Camiola did not explain to petitioners that cash and noncash contributions must be reported separately.  Petitioners reported their charitable contributions of $165,026 as gifts by cash or check.

B.   Respondent's Determinations

In the notice of deficiency respondent determined that Mr. van der Lee "did not qualify as a trader in securities under I.R.C. section 475(f) during the 2002 tax year" and that he was not eligible to elect the use of the mark-to-market accounting method for the securities activity.  Respondent also determined that petitioners failed to make a timely and effective mark-to-market election under section 475(f).  As a result, respondent determined that the $1,388,327 loss on the sale of securities should be reported as a capital loss on Schedule D, Capital Gains and Losses, that is deductible only to the extent of $3,000 under sections 165(f) and 1211(b)(1).  Respondent also disallowed all Schedule C expenses.

Respondent disallowed $98,752 of the charitable contribution deduction and determined that a 20-percent accuracy-related penalty under section 6662(a) applied.

OPINION

## I.  Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving them erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Also, deductions are a matter of legislative grace, and the taxpayer has the burden of showing entitlement to any deduction claimed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Petitioners contend that the burden of proof shifts to respondent pursuant to section 7491(a).  Section 7491(a)(1) may shift the burden to the Commissioner with respect to factual issues affecting liability for tax where the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining tax liability.  However, the taxpayer must establish that he or she has complied under section 7491(a)(2) with all substantiation requirements, has maintained all required records, and has cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2).

The record does not establish that the requirements for shifting the burden of proof to respondent are met. In any case, we base our conclusions on the preponderance of the evidence and not on the allocation of the burden of proof. See Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008).

II. Purchases and Sales of Securities

A. Trader or Investor

Section 165 generally allows a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. However, section 165(f) provides that losses from sales or exchanges of capital assets are allowed only to the extent allowed under sections 1211 and 1212. Section 1211(b) limits the allowance of such losses to the extent of gains from such sales or exchanges, plus the lower of (1) $3,000 ($1,500 in the case of a married individual filing a separate return), or (2) the excess of such losses over such gains.

Section 1221 defines capital assets as any property held by the taxpayer, whether or not connected with his trade or business. Section 1221(a)(1) creates an exception to the definition of the capital asset:

> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *

Accordingly, taxpayers who are not dealers generally recognize capital gain or loss upon the sale or exchange of their stock, rather than ordinary gains or losses.

However, if a taxpayer who is not a dealer is engaged in business as a securities trader, section 475(f) allows such taxpayer to elect the mark-to-market method of accounting for securities held in his business.[6]  Under the mark-to-market method of accounting a trader generally recognizes at the end of the year ordinary gain or loss on all securities held in the business as if the securities were sold at the end of the year for fair market value.  Sec. 475(d)(3)(A), (f)(1)(A)(i); Knish v.

---

[6]A securities trader electing under sec. 475(f) to use the mark-to-market method of accounting for securities held in his business is required to file with the Commissioner a statement making the election, identifying the first taxable year for which the election is effective, and describing the business.  See Knish v. Commissioner, T.C. Memo. 2006-268; Rev. Proc. 99-17, sec. 5.03(1), 5.04, 1999-1 C.B. 503, 504-505.  The taxpayer must file the statement no later than the due date of the trader's original Federal income tax return for the year immediately preceding the election year, and if the election entails a change in the accounting method, the trader must also attach a Form 3115, Application for Change in Accounting Method, to the original return for the election year.  Rev. Proc. 99-17, secs. 5.03(1), 5.04, 6.02(2), 1999-1 C.B. at 504, 505.

For a trader's first year of business, the trader may make the sec. 475(f) election by placing in the books and records of the business, no later than 2 months and 15 days after the first day of the year, a written statement making the mark-to-market election, identifying the first taxable year for which the election is effective, and describing the business to which the election relates.  Rev. Proc. 99-17, sec. 5.03(2), 1999-1 C.B. at 505.  The trader must attach a copy of the statement to the trader's Federal income tax return for the election year.  Id.

Commissioner, T.C. Memo. 2006-268; Lehrer v. Commissioner, T.C. Memo. 2005-167, affd. 279 Fed. Appx. 549 (9th Cir. 2008). Where the trader has not made a proper election, the losses are treated as capital losses and are deductible only to the extent of capital gains plus $3,000. Secs. 165(a), (c), (f), 1211(b)(1); Knish v. Commissioner, supra.

As follows from the foregoing, the proper taxation of gains and losses from the taxpayer's securities activity depends on whether he is a dealer, a trader, or an investor. See Estate of Yaeger v. Commissioner, 889 F.2d 29 (2d Cir. 1989), affg. in part, revg. in part on another issue and remanding T.C. Memo. 1988-264; King v. Commissioner, 89 T.C. 445, 458-459 (1987). Petitioners contend that Mr. van der Lee was a trader in 2002, and respondent contends he was an investor.

Generally, traders are engaged in the trade or business of selling securities for their own account. See King v. Commissioner, supra at 457-458. Although investors also buy and sell securities for their own account, they are not considered to be in the trade or business of selling securities. See Kay v. Commissioner, T.C. Memo. 2011-159; Arberg v. Commissioner, T.C. Memo. 2007-244. Unlike an investor's expenses, a trader's expenses are deducted in determining adjusted gross income rather than as itemized expenses. See, e.g., Kay v. Commissioner, supra. Whether a taxpayer's activities constitute a trade or

business is a question of fact.  See <u>Higgins v. Commissioner</u>, 312 U.S. 212, 217 (1941).

In distinguishing a trader from an investor, courts consider the following nonexclusive factors:  (1) The taxpayer's intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's securities transactions.  See <u>Estate of Yaeger v. Commissioner</u>, <u>supra</u> at 32 (quoting <u>Moller v. United States</u>, 721 F.2d 810, 813 (Fed. Cir. 1983)); see also <u>Purvis v. Commissioner</u>, 530 F.2d 1332, 1334 (9th Cir. 1976), affg. T.C. Memo. 1974-164.  The Court of Appeals for the Second Circuit, where the appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that the length of the holding period and the source of profit are the two fundamental distinguishing criteria, see <u>Estate of Yaeger v. Commissioner</u>, <u>supra</u> at 33.  Investors derive profit from interest payments, dividends, and capital appreciation of securities.  <u>Id.</u>  Traders buy and sell securities with reasonable frequency with the purpose of catching the swings in the daily market movements and profiting on a short-term basis.  <u>Id.</u>

The length of time Mr. van der Lee held stocks before selling suggests that in 2002 he was an investor rather than a trader.  He never sold stocks on the day of their acquisition. Of the 76 sales of stocks between April 15 and December 31, 2002,

35 involved shares that Mr. van der Lee had acquired before 2002. His potential source of profit, if any, was asset appreciation rather than short-term price variation. Mr. van der Lee did not seek to profit from the swings in the daily market movements and instead intended to profit from the longer term holding of investments.

Mr. van der Lee also did not trade with sufficient frequency to qualify as a trader. The brokerage statements show that between April 15 and December 31, 2002, Mr. van der Lee executed 148 trades through the Merrill Lynch account and 11 trades through the Prudential account. Of the 148 trades, 30 were executed pursuant to options that Mr. van der Lee had written or acquired.[7] Mr. van der Lee's total number of trades was

---

[7]The parties stipulated that in 2002 there were a total of 94 purchases and 94 sales in the Merrill Lynch account. However, Mr. van der Lee testified that from April through December 2002 he executed 171 trades. Mr. van der Lee commenced his securities activity after Apr. 15, 2002, but the parties' stipulations are unclear as to whether they cover the full calendar year. In addition, the parties's stipulations are unclear regarding the extent, if any, to which they include options pursuant to which the parties sold or acquired stocks.

The record contains the yearend statement and the December 2002 statement issued by Merrill Lynch. For our findings of fact we employed the following methodology. First, we ignored certain transactions involving shares of Viacom. Until Dec. 31, 2002, Mrs. van der Lee had worked for Viacom for 14 years. She received Viacom stock options and exercised them, acquiring 8,000 Viacom shares. On Apr. 23, 2002, petitioners sold the Viacom stock in three transactions. These transactions, namely the purchase of the shares pursuant to the options and the sales of the shares, did not relate to Mr. van der Lee's trading activity.
(continued...)

therefore 189.  In April, July, August, and September, almost one-half of the time he engaged in the securities activity Mr. van der Lee placed between four and eight trades.  In June 2002 he executed 29 trades, but on only 5 days.  In addition, Mr. van der Lee traded on only 11 days in the Prudential account, averaging 3 or 4 trading days per month.  Mr. van der Lee had a spurt of trading activity in the Merrill Lynch account in December, but overall his activity was sporadic.

Mr. van der Lee's number of trades also does not support a conclusion that in 2002 he was a trader.  See Kay v. Commissioner, supra (313 trades held insubstantial); Holsinger v. Commissioner, T.C. Memo. 2008-191 (289 trades with aggregate

---

[7](...continued)

Second, we identified all transactions pursuant to which Mr. van der Lee purchased or sold shares, including the purchases of shares that he held at yearend.  On the basis of the December 2002 statement, we also identified all options that Mr. van der Lee purchased or wrote that were held open as of Dec. 31, 2002. We then identified all options that Mr. van der Lee wrote or acquired that expired and included the original option transaction as a trade.  We did so using the December 2002 and the yearend statements, which together show that on the yearend statement under "short-term capital gains" Merrill Lynch reported gains and losses with respect to expired options.  With respect to options that Mr. van der Lee wrote or acquired between Apr. 15 and Dec. 31, 2002, that were exercised, we relied on the yearend statement.  If the yearend statement shows the basis and/or the sale price of the underlying stock includes an option premium, we counted the option itself as a trade in addition to the trade of the underlying stock.  The yearend statement does not identify the date on which Mr. van der Lee acquired or wrote the options that were exercised, and we therefore are unable to find his monthly number of trades with precision.

sales of $754,277 in 1 year held insubstantial).[8]  We conclude that Mr. van der Lee was not a trader in 2002, and petitioners are limited to a $3,000 deduction of losses arising from the purchase and sale of securities under section 1211(b).

B.    Respondent's Motion for Summary Judgment

Respondent filed a motion for partial summary judgment on the issue of whether petitioners were permitted to use the mark-to-market method of accounting for 2002.  Respondent contends that regardless of whether Mr. van der Lee was a trader in 2002, petitioners failed to make the mark-to-market election and therefore are not entitled to claim ordinary losses.  Respondent also contends that petitioners are not entitled to administrative relief for failing to make a valid election under section 301.9100-3, Proced. & Admin. Regs.[9]  Petitioners argue that

---

[8]We note, however, that in any case the Court of Appeals for the Second Circuit does not consider a large number of trades determinative of whether the taxpayer was a trader or an investor.  See Estate of Yaeger v. Commissioner, 889 F.2d 29, 33-34 (2d Cir. 1989) (holding the taxpayer was an investor when he executed over 2,000 trades in 1979 and 1980 but held most stocks for over 1 year), affg. in part, revg. in part on another issue and remanding T.C. Memo. 1988-264.

[9]Under sec. 301.9100-3, Proced. & Admin. Regs., the Commissioner may grant administrative relief to a securities trader with regard to an improper mark-to-market election if the trader, among other things, requests sec. 9100 relief and demonstrates that he acted reasonably and in good faith in failing to make a timely election under sec. 475(f).  A trader has not acted reasonably and in good faith if the trader uses hindsight in requesting relief by attempting to make a sec. 475(f) mark-to-market election after the election was due.

(continued...)

because in 2002 Mr. van der Lee was a new trader rather than a continuing trader, the rules on filing the mark-to-market election do not apply. Petitioners also contend that the failure to elect the mark-to-market method of accounting does not preclude Mr. Van Der Lee from using "the ordinary accounting method of deducting losses". According to petitioners, section 475(f), if elected, creates a rebuttable presumption that the taxpayer is a trader, but if the taxpayer made no such election, he bears the burden of proving his trader status.

We held a hearing on the motion and announced an intention to grant respondent's motion partially in that the election under section 301.9100-3, Proced. & Admin. Regs., does not apply. Thereafter a trial was held in New York. In the light of our conclusion that Mr. van der Lee was not a trader, we will deny respondent's motion as moot. For the same reason, we do not address petitioners' arguments.

C. Expenses Related to the Activity

1. In General

Section 162 generally allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As discussed above, in 2002

---

[9](...continued)
Kantor v. Commissioner, T.C. Memo. 2008-297.

Mr. van der Lee was not a trader, and therefore he is not entitled to the deductions under section 162.

Nevertheless, under section 212 individuals are allowed to deduct ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production income. To be deductible under section 212, expenses must be ordinary and necessary. See sec. 1.212-1(d), Income Tax Regs. Section 1.212-1(d), Income Tax Regs., provides that expenses are deductible under section 212 only if they are reasonable in amount and bear a reasonable and proximate relation to the production or collection of income or to the management, conservation, or maintenance of property held for the production of income. No deduction is allowed for personal expenditures. Sec. 262(a). Expenses under section 212 are allowed as miscellaneous itemized deductions only to the extent that in the aggregate itemized deductions exceed 2 percent of adjusted gross income. Sec. 67(a). We now consider petitioners' specific expenses.

2. <u>Legal and Professional Services Expenses</u>

Respondent disallowed a deduction for legal and professional services expenses of $750. The record contains two bills

totaling $782 issued by the law firm of Norton & Christensen.[10] However, the record contains no credible evidence establishing that the legal advice pertained to Mr. van der Lee's activity of purchasing and selling stocks, as opposed to personal matters. We sustain respondent's determination disallowing legal and professional services expenses.

### 3. Travel and Meals and Entertainment Expenses

Generally, a deduction is not allowed for travel expenses, meals and entertainment expenses, and any expenses for gifts or listed property unless the taxpayer properly substantiates:  (1) The amount of such expense; (2) the time and place of the expense; (3) the business purpose; and (4) in the case of meals and entertainment, the business relationship between the taxpayer and the persons being entertained.  Sec. 274(d).  Deductions for expenses that are subject to the strict substantiation requirements of section 274(d) must be disallowed in full unless the taxpayer satisfies every element.  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

A taxpayer may substantiate his deductions by either adequate records or sufficient evidence corroborating the taxpayer's statement.  Sec. 274(d).  To satisfy this requirement,

---

[10]Petitioners explain that they deducted these expenses under the category of office expenses.

a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  In the absence of adequate records, a taxpayer may establish an element of an expenditure by his or her statement, written or oral, containing specific information as to such element.  Larson v. Commissioner, T.C. Memo. 2008-187; sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

To substantiate this category of deductions, petitioners submitted credit card statements and summaries on which they circled purportedly deductible items.  However, these documents substantiate only the amounts of the expenses but not the other elements of section 274(d), such as the business purpose or the business relationship between Mr. van der Lee and persons being entertained.  The record is devoid of any details of Mr. van der Lee's travel or the business purpose of each trip.[11]  We sustain respondent's determination disregarding this category of expenses.

### 4.  Office and Utilities Expenses

To substantiate the deductions for office and utilities expenses, petitioners submitted bank and credit card statements,

---

[11]Mr. van der Lee stated at trial that he provided to the IRS the list of contacts showing with whom he met.  The list was not organized by date and is not part of the record.

invoices, payment confirmations, and receipts.[12]  With respect to

the charges for utilities and security, house cleaning, and

exterminator services, generally, under section 280A[13] no

deduction is allowable for use of a home in connection with an

activity which is merely for the production of income within the

meaning of section 212 but is not a trade or business under

section 162.  <u>Curphey v. Commissioner</u>, 73 T.C. 766, 770 (1980).

With respect to the charges for PC Warehouse, Radio Shack,

PalmNet, Gateway, CompUSA, and Best Buy, petitioners failed to

present credible evidence establishing what Mr. van der Lee

purchased and that the items he purchased were not for personal

use.  Although Mr. van der Lee testified that when he decided to

start trading, he researched the technology side of the

---

[12]The expenses were:  Direct TV ($444), Cottage Care cleaning services ($2,385), S&B Total Home ($3,850), land surveyor services ($2,400), payments to Bruce McKinnon and Mr. Tammaro ($1,050), New York Post subscription ($372), Radio Shack and PalmNet ($364), Gateway ($2,418), cable ($1,200), Cablevision ($1,368), PC Warehouse ($154), Staples, CompUSA, and Best Buy ($691), Chubb Insurance ($1,421), security services ($2,799), shipping ($1,243), Bug Runner Exterminator ($729), water ($196), Brazilian American ($125), House and Garden and Renovation Style magazines ($55), Suburban Propane ($2,226), Rockland Electric ($1,200), and communications charges, such as AT&T Services, Palmnet service, GTE Airfone, and others ($8,875).

[13]Sec. 280A(a) generally disallows deductions for expenses with respect to a "dwelling unit" used by a taxpayer as a residence unless an exception applies.  Sec. 280A(c) exempts from the general disallowance rule expenses attributable to a dwelling unit which is exclusively used on a regular basis as a principal place of business for any trade or business of the taxpayer.

operations and set up a trading floor, such general testimony is insufficient to substantiate the claimed deductions.

With respect to the payments to Mr. McKinnon and Mr. Tammaro and the payments for the land surveyor services, New York Post, House and Garden and Renovation Style magazines, shipping, and various communications services, the record contains no credible evidence regarding the ordinary and necessary and nonpersonal nature of the expenses. We sustain respondent's determinations disallowing the deductions for these expenses. See sec. 262.

## III. Charitable Contribution Deduction

The following charitable contributions remain at issue:

| Description | Amount |
| --- | --- |
| Underage | $1,613 |
| Percentage of home used for charity | 6,000 |
| Partial interest in the Caribbean residence | 1,356 |
| Charitable use of the Caribbean residence | 11,500 |
| NDSS expenses | 32,635 |
| Bug Runners | 500 |
| Rockland Occupational Therapy for Kids | 1,475 |
| Hudson Valley Materials Exchange and Tuxedo Park School | |
|   Fridge and freezer | 2,800 |
|   Cabinets and granite countertops | 27,729 |
|   Sink, faucet, dishwasher | 680 |
|   Toilet, sink, and vanity | 550 |
|   Range | 1,250 |
|    Total | 88,088 |

Generally, section 170(a) allows a deduction for any "charitable contribution" made by the taxpayer. A "charitable contribution" is defined as "a contribution or gift to or for the use of" a charitable organization. Sec. 170(c). Because the recordkeeping

requirements under the Code and the regulations vary depending on the amount and nature of the contribution, we address each category separately.

A.  NDSS Expenses

Mrs. van der Lee testified about her pro bono work for the charitable organizations.  We find her testimony credible on this point, and we find that she rendered services to NDSS.  No deduction is allowable under section 170 for a contribution of services, but "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution."  Sec. 1.170A-1(g), Income Tax Regs.

Recently in Van Dusen v. Commissioner, 136 T.C. ___ (2011), we have addressed the deductibility of expenses incident to the rendition of services to a charitable organization and the recordkeeping requirements.  To be deductible, unreimbursed expenses must be directly connected with and solely attributable to the rendition of services to a charitable organization.  See id. at ___ (slip op. at 22-23); Saltzman v. Commissioner, 54 T.C. 722, 724 (1970).  Charitable contributions are subject to the recordkeeping requirements of section 1.170A-13(a), Income Tax Regs., for monetary contributions, or section 1.170A-13(b), Income Tax Regs., for contributions of property other than money. In Van Dusen v. Commissioner, supra at ___ (slip op. at 37-38),

we held that contributions through the payment of unreimbursed volunteer expenses of less than $250 are subject to the requirements for contribution of money set forth in section 1.170A-13(a), Income Tax Regs.  Section 1.170A-13(a)(1), Income Tax Regs., requires the taxpayer to maintain a canceled check or a receipt from the donee organization.  In the absence of a canceled check or a receipt from the donee organization, the taxpayer must maintain other reliable written records showing the name of the donee and the date and the amount of the contribution.  Id.

To claim a charitable contribution deduction of $250 or more, the taxpayer must substantiate the contribution with a contemporaneous written acknowledgment from the donee organization.  Sec. 170(f)(8)(A); sec. 1.170A-13(f)(1) and (2), Income Tax Regs.  A taxpayer who incurs unreimbursed expenses "incident to the rendition of services" is deemed to have obtained such acknowledgment if the taxpayer (1) has adequate records to substantiate the amount of the expenditures and (2) obtains by a prescribed date a statement prepared by the donee organization containing specified information.  See sec. 1.170A-13(f)(10), Income Tax Regs.; see also Van Dusen v. Commissioner, supra at ___ (slip op. at 37-38).  Contributions of less than $250 to the same donee are not subject to these additional requirements even if the aggregate donations to the donee exceed

$250 within the same taxable year.  See Van Dusen v. Commissioner, supra at ___ n.26 (slip op. at 26 n.26); sec. 1.170A-13(f)(1), Income Tax Regs.

Even if we assume that Mrs. van der Lee's expenditures were directly connected with and solely attributable to her services to NDSS, petitioners failed to satisfy the substantiation requirements.  The record contains no list of expenses or receipts.  There is no trip log or written acknowledgment from NDSS describing Mrs. van der Lee's services and other information as required by section 1.170A-13(f)(10)(ii), Income Tax Regs.  Mrs. van der Lee testified that the credit card statements in the record show some of these expenses.  However, petitioners submitted those credit card statements with circled items to substantiate Mr. van der Lee's deductions for expenses related to his securities activity.

Because the record contains only the total amount of expenses incurred for NDSS, it is not clear whether any of the expenses were more than $250.  Even if we erred on petitioners' side and concluded that the less stringent substantiation requirements of section 1.170A-13(a), Income Tax Regs., applied, we would nevertheless conclude that petitioners fail even those requirements.  In the absence of receipts, the taxpayer must provide reliable written records showing the names of the donees and the dates and amounts of the contributions or, in this case,

expenses.  Sec. 1.170A-13(a)(1)(iii), Income Tax Regs.  The record contains no such reliable written records.  We sustain respondent's determination regarding a deduction for contributions to NDSS.

B.   Charitable Use of the Caribbean Residence

With respect to the charitable use of the Caribbean residence, petitioners deducted the rental value of the residence for the length of the charitable use.  They also deducted a portion of the maintenance expenses they paid.  Mr. van der Lee explained at trial that because petitioners own a 3-week share of the Caribbean residence and they donated 1 week to NDSS, they claimed 30 percent of applicable maintenance fees as a charitable contribution.[14]  Mr. van der Lee testified that they received a document from NDSS acknowledging the donation of the use of the Caribbean residence, but petitioners introduced no credible documentary evidence regarding this deduction at trial.

Generally, subject to certain exceptions, section 170(f)(3)(A) disallows a charitable contribution deduction for a gift of a partial interest in property not in trust.  Petitioners do not argue that any of the exceptions under section

_____

[14]Mrs. van der Lee testified that they donated the use of the Caribbean residence to two different organizations in 2002. The record contains no other reference to a second donee organization.  Because Mrs. van der Lee's testimony on the point was vague, on the basis of Mr. van der Lee's testimony we find that the donated use was 1 week.

170(f)(3)(B)[15] apply, and we conclude none are applicable.
Accordingly, we sustain respondent's determination regarding the
deduction for the charitable use of the Caribbean residence.

    C.    <u>Hudson Valley Materials Exchange</u>

As described above, for a charitable contribution deduction
of $250 or more, the taxpayer must substantiate the contribution
with a contemporaneous written acknowledgment from the donee
organization.  Sec. 170(f)(8)(A); sec. 1.170A-13(f), Income Tax
Regs.  For contributions of property other than money, the
written acknowledgment must provide, among other information, a
description of the property and a statement of whether the donee
organization provided any goods or services in consideration for
the property.  See sec. 1.170A-13(f)(2), Income Tax Regs.

Besides the written acknowledgment requirement, the
regulations establish an additional three-tier recordkeeping
system for contributions of property other than money.  In the
case of a deduction of less than $500 for a contribution of
property other than money, the taxpayer must maintain a receipt
from the donee showing the name of the donee, the date and

---

[15]The exceptions are:  (1) A contribution of a remainder
interest in a personal residence or farm, (2) a contribution of
an undivided portion of the taxpayer's entire interest in
property, and (3) a qualified conservation contribution.  Sec.
170(f)(3)(B).  The second exception does not apply because an
undivided portion must consist of a fraction or percentage or
each substantial right and "must extend over the entire term of
the donor's interest in such property".  Sec. 1.170A-7(b)(1),
Income Tax Regs.

location of the contribution, and a detailed description of the property. See sec 1.170A-13(b)(1), Income Tax Regs. A letter or other written communication from the donee acknowledging receipt of the contribution constitutes such receipt. Id. A receipt is not required if it is impractical to obtain, for example, when the taxpayer deposits property at a charity's unattended drop site. Id. In such a case the taxpayer must maintain reliable written records with respect to each item of donated property. Id.

If a taxpayer makes a charitable contribution of property other than money and claims a deduction in excess of $500, the taxpayer must maintain written records showing the manner of acquisition of the item and the approximate date of the acquisition. See sec. 1.170A-13(b)(3), Income Tax Regs. Lastly, if the deduction exceeds $5,000, the taxpayer must (1) obtain a qualified appraisal for the contributed property, (2) attach a fully completed appraisal summary (i.e., Form 8283, Noncash Charitable Contributions) to the tax return on which the deduction is claimed, and (3) maintain records pertaining to the claimed deduction in accordance with section 1.170A-13(b)(2)(ii), Income Tax Regs. See sec. 1.170A-13(c)(2), Income Tax Regs. A qualified appraisal must include, among other things, a detailed description of the property, its physical condition, the valuation method used to determine the fair market value, and the

specific basis for the valuation.  See sec. 1.170A-13(c)(3)(ii), Income Tax Regs.  A qualified appraisal must be performed by a qualified appraiser no earlier than 60 days before the date of the contribution and no later than the due date of the return. Sec. 1.170A-13(c)(3)(i)(A) and (B), Income Tax Regs.

Generally, the amount reported as a deduction for contributions of property is an aggregate amount for all similar items of property.  See sec. 1.170A-13(c)(1)(i), Income Tax Regs. We find the donated kitchen items were similar items of property. Accordingly, we aggregate all items in this category and consider the deduction to exceed $5,000.  Petitioners therefore need to establish that they met the substantiation requirements applicable to deductions over $5,000.

Petitioners failed to attach a Form 8283 to their return. They obtained an appraisal by Masterwork Kitchens dated July 27, 2001.[16]  The appraisal was not a qualified appraisal because it was untimely.  See Friedman v. Commissioner, T.C. Memo. 2010-45. Petitioners did not present written acknowledgments of the contributions by the donees and receipts from the donees.  They therefore failed to establish that they met the requirements of the three-tier recordkeeping system described supra pp. 27-28.

---

[16]The appraisal did not include the refrigerator, the freezer, the toilet, and the vanity, the values of which petitioners also deducted as charitable contributions.

However, petitioners met the general recordkeeping requirements for a charitable contribution deduction of less than $250 because no written acknowledgment from the donee organization is required for contributions of property valued at $250 or less. See sec. 1.170A-13(f)(1), Income Tax Regs. Petitioners' records for the contribution of the kitchen items meet the requirements for substantiating contributions of $250 or less. We allow petitioners a $250 deduction for their contribution of the kitchen items and sustain respondent's determination disallowing the deduction of the remaining amount.

D.    Percentage of Home Used for Charity

Mrs. van der Lee testified that she calculated this deduction on the basis of various expenses to establish a home office, such as the cost of a computer, telephones, fax machines, and copiers for her charitable work. Petitioners did not introduce any credible documentary evidence substantiating these expenses and are not entitled to the claimed deduction.

E.    Underage, Rockland Occupational Therapy for Kids, and Bug Runners

Mrs. van der Lee testified that she did not know what the contribution identified as "Underage" was. She testified that Bug Runners is an exterminator and that she did not know why that expense was reported as a charitable contribution, other than the

fact that she performed her charitable work from home.[17]  With respect to the contribution to Rockland Occupational Therapy for Kids, Mrs. van der Lee did not recall the details.

Petitioners presented no credible evidence to substantiate these contributions.  Because each of these contributions is over $250 and the record contains neither written acknowledgment of the contributions by the donees nor petitioners' reliable written records, we sustain respondent's disallowance of these deductions.

## IV.  The Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that the portion of the underpayment resulting from improper reporting of charitable contributions is attributable to negligence and imposed the accuracy-related penalty under section 6662(a) and (b)(1).

Generally, section 6662(a) and (b)(1) authorizes the Commissioner to impose a 20-percent penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional

---

[17]The record contains a credit card statement showing a charge for Bug Runner Exterminator.  However, petitioners attempted to use this receipt to substantiate Mr. van der Lee's office expense deduction.

disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs.  Disregard of rules or regulations is careless if "the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and is reckless if "the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe".  Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty.  See sec. 7491(c).  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position.  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Respondent met his burden of production.  He introduced evidence that petitioners failed the substantiation requirements of section 170 and regulations thereunder.  Accordingly, petitioners had the burden of producing sufficient evidence to prove that respondent's penalty determination is incorrect.  See

Higbee v. Commissioner, supra at 446-447.  Petitioners did not carry that burden.  The failure to properly substantiate their claimed deductions evidences negligence and careless disregard of the rules and regulations.

Petitioners contend that they should not be liable for the section 6662(a) penalty because they relied on Mr. Camiola to properly report the deductions.  Generally, section 6664(c)(1) provides an exception to the section 6662(a) accuracy-related penalty with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  Reliance on the advice of a tax professional may establish reasonable cause and good faith.  See United States v. Boyle, 469 U.S. 241, 250 (1985).  A taxpayer claiming reliance on professional advice must show that:  (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioners failed to provide Mr. Camiola with all relevant information.  They gave him only the total of the charitable contributions and did not tell him that a large portion of the

contributions was not gifts by cash or check.  Petitioners have failed to carry their burden of proving that there was reasonable cause for, and that they acted in good faith with respect to, any portion of the underpayment in tax.  In addition, we disallow the charitable contribution deduction on the ground of the lack of credible evidence in the record.  We sustain respondent's determination of the accuracy-related penalty.

We have considered the remaining arguments the parties made and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision under Rule 155 will be entered</u>.