LEONHARD FELIX FULD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORENTINE M. FULD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 98205, 98206. Promulgated August 22, 1941.

*O. R. Folsom-Jones, Esq.*, for the petitioners.
*Dean P. Kimball, Esq.*, for the respondent.

## OPINION.

LEECH: In their tax returns for 1933, petitioners offset losses sustained from the sale of securities held more than two years against profits made from the sale of securities held less than two years, on the ground that all of such securities were being held in 1933 primarily for sale in the course of a trade or business. Respondent refused to allow the offset, claiming that these losses resulted from the sale of capital assets and were subject to the limitations of section 101 of the Revenue Act of 1932.

Petitioners apparently do not contend that they were engaged in a trade or business prior to their adoption of a new policy in the last quarter of 1930, and even though such a contention were raised, it would have to be rejected. *Higgins* v. *Commissioner*, 312 U. S. 212; *Miller* v. *Commissioner*, 102 Fed. (2d) 476. Petitioners argue, however, that they adopted a new policy in the last quarter of 1930 and thereafter engaged only in carrying out activities under it which constituted the business of trading in securities. They argue that all their securities which were acquired prior to as well as after that time were being held in 1933 as part of that business. The

respondent contends that the petitioners were not engaged in a trade or business in 1933 and, even if they were, the securities purchased before the advent of their new policy were still being held for sale in 1933, in the course of the orderly liquidation of their investment activities and, as such, were capital assets.

The issue is whether or not the securities held for more than two years and sold in 1933 were being held in that year, primarily for sale in the course of a trade or business.

Some of the securities sold by petitioners in 1933, and held for more than two years, were acquired subsequent to the advent of their new policy and some were acquired prior to that time. Undoubtedly the former were being held in 1933 for sale in the course of the activities of the petitioners occasioned by their new policy of trading in securities. Thus, the determination of whether or not these securities were capital assets is dependent upon whether such activities of the petitioners, in 1933, constituted a trade or business. To determine this has been held to "require an examination of the facts in each case", *Higgins* v. *Commissioner, supra;* and "a factor of more decisive importance than the volume of transactions lies in whether or not the taxpayer's market activities consisted in dealing in securities for speculative purposes, or for investment purposes." *Sam J. Reckford*, 40 B. T. A. 900.

Despite the investment status of all their activities before, the petitioners maintain that their activities in which they were engaged under their new policy constituted the business of trading or speculating in securities. We are convinced that they have sustained their burden of establishing this fact. *Jackson* v. *United States*, 25 Fed. Supp. 613; affd., 110 Fed. (2d) 574; see also *Clinton Gilbert, Jr., Executor*, 20 B. T. A. 765. The petitioners' activities were not "limited to doing merely what was necessary from an investment point of view", and their transactions "were substantial and frequent rather than occasional or isolated." *Alice duPont Ortiz*, 42 B. T. A. 173. Moreover, besides devoting a large part of their time to their new activities of buying and selling securities for their own accounts, the principal source of their livelihood resulted from such activities. In our opinion, the petitioners' activities constituted the business of trading in securities in 1933 and those securities acquired subsequent to the advent of their new business, October 9, 1930, were being held, in 1933, for sale in the course of that business. Accordingly, we have so found. *Commissioner* v. *Purdy*, 102 Fed. (2d) 331, affirming 36 B. T. A. 572; *Ignaz Schwinn*, 9 B. T. A. 1304; *Harriet Pullman Schermerhorn*, 26 B. T. A. 1031; cf. *Higgins* v. *Commissioner, supra*. Therefore, we hold that the losses from the sale thereof in 1933 are

not capital losses within the meaning of section 101 of the Revenue Act of 1932.

With respect to the securities acquired prior to the advent of the petitioners' business of trading, and held more than two years, the situation is different. On October 9, 1930, the petitioners commenced activities under their newly adopted policy of trading as distinguished from investing in securities. It may be that some of the investment stock acquired before that date was appropriated to their trading business, but, if so, this record does not disclose it. See *Commissioner* v. *Purdy, supra.* In fact, the record indicates the opposite. Under this new policy, they purchased securities, the price of which, analysis and information indicated, would enjoy a quick rise as distinguished from long term appreciation, which was a moving element in their purchases before October 9, 1930. Before the adoption of the new policy petitioners had purchased securities in "ten, fifteen or twenty share lots"[1] for long term appreciation and interim returns, but thereafter fewer securities in blocks of 100 to 3,000 shares were bought for quick turnover at a small profit per share. Returns on the "new" securities were not as important as they had been under their investment policy.

In order to obtain funds to effectuate this new policy, they began disposing of their investment holdings acquired prior to October 9, 1930.[1] This disposition continued through the taxable year 1933. Thus the question is whether or not the securities acquired for investment purposes prior to the beginning of the petitioners' security trading business, October 9, 1930, were being held for sale in 1933 in the course of that business.

In our judgment these securities were not so held. They were being held in 1933 for the same purpose as they were held upon the advent of their new policy in 1930, viz., sale to create a fund in order to purchase securities in which to trade under their new policy. In other words, these securities were being sold in order that the petitioners would have on hand the capital necessary to purchase securities in the course of their business of trading in securities. Despite the fact that petitioners' security activities before October 9,

---

[1] Petitioner Leonhard Fuld testified: "In order to carry out this change in policy it became necessary for me to get the requisite funds by the sale of securities which I had acquired prior to 1930, and I went about it. It was a task of Hercules, because I had thousands of holdings, and what I did was take, every week, twenty or thirty holdings and sell them and create a fund, and then at the time I thought was opportune, I invested that accumulated fund in a single new security so that while prior to 1930 I had purchased securities in ten or fifteen or twenty share lots, after 1930 I began to purchase securities in thousand or two thousand or three thousand share lots, with the idea of making a quick turnover and getting a profit on that quick turnover, even if the amount of profit was comparatively small. If I made a single point on a share and I had 3,000 shares, that would be $3,000."

1274

1930, did not constitute a business, the securities then purchased were bought for investment as distinguished from trading purposes. At the time they were sold in 1933, we do not think that those securities had lost their character as investment securities. In our opinion they were being held for sale in 1933, not "in the course of" their trading business but, "in the course of" liquidating their investment activities in which they were engaged prior to 1930 and, as such, still remained a part of such activities. We have so found. See *Richards* v. *Commissioner*, 81 Fed. (2d) 369; *Commissioner* v. *Boeing*, 106 Fed. (2d) 305; certiorari denied, 308 U. S. 619; *Florence H. Ehrman*, 41 B. T. A. 652; *Robert C. Duff*, 23 B. T. A. 1343; and *George H. Peck*, 19 B. T. A. 345. We conclude that the securities in question which were acquired prior to the advent of the petitioners' new policy, October 9, 1930, were capital assets, and the losses sustained from their sale in 1933 were capital losses subject to the limitations of section 101 of the Revenue Act of 1932.

Since there appears no issue as to the dates on which the securities in question were purchased and their respective costs,

*Decisions will be entered under Rule 50.*