T.C. Memo. 2014-33

UNITED STATES TAX COURT

FARIBORZ ASSADERAGHI AND MIAO-FEN LIN, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7677-12.                    Filed February 25, 2014.

<u>Mark R. Shepherd</u> and <u>Kristin R. Wu</u>, for petitioners.

<u>Kaelyn J. Romey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies of $114,650 and

$6,269 in petitioners' Federal income tax for 2008 and 2009, respectively, and

accuracy-related penalties under section 6662(a)[1] of $22,930 and $1,254 for 2008

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] and 2009, respectively.  After concessions,[2] the issues for decision are:  (1)

whether petitioner husband Fariborz Assaderaghi was a trader[3] in securities during

2008 and 2009; and (2) if so, whether petitioners made a timely and effective

mark-to-market accounting method election pursuant to section 475(f).[4]

---

[1](...continued)
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to
the nearest dollar.

[2]Respondent concedes that petitioners are not liable for the accuracy-related
penalty under sec. 6662(a) for either of the years at issue.  Petitioners concede that
they received interest income of $1,901 in 2008.

[3]We use the term "trader" to refer to a taxpayer who, as discussed below,
engages in a trade or business within the meaning of sec. 162(a) of selling
securities for his or her own account.

[4]In their petition, petitioners alternatively contend that if Mr. Assaderaghi
was an investor and not a trader during the years at issue, respondent failed to
allow deductions for ordinary and necessary expenses paid or incurred during the
taxable year for the production or collection of income.  See sec. 212(1).  The
expenses of an investor that otherwise satisfy the requirements of sec. 212 are
deductible under that section as itemized deductions that are subject to the 2%
floor imposed by sec. 67(a).  Sec. 163(d) also limits the deductibility of investment
interest.  See Endicott v. Commissioner, T.C. Memo. 2013-199.

Respondent states that the adjustment to petitioners' sec. 212 deductions is
computational and does not address this issue on brief.  Petitioners also do not
discuss their sec. 212 deductions on brief.  We need not address this issue further.

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulations of facts are incorporated herein by this reference.  Petitioners resided in California when they petitioned this Court.

I.    Background

Mr. Assaderaghi holds an undergraduate degree from San Diego State University and an M.S. and a Ph.D. in electrical engineering and computer science from the University of California at Berkeley.  His primary background is in physics and mathematics.

During the years at issue Mr. Assaderaghi was the vice president of engineering at SiTime, Inc. (SiTime), where his annual salary in 2008 was $230,000.[5]  He typically began his workday at SiTime between 9:30 and 10 a.m. and finished his workday between 7:30 and 8 p.m.  He also worked weekends and late hours as necessary to complete SiTime projects.

---

[5]Through February 2008 Mr. Assaderaghi was the engineering director at Rambus, Inc.  He was hired by SiTime in February 2008.  By the time Mr. Assaderaghi left SiTime in 2012, he was the vice president of both engineering and operations.

SiTime was a small startup tech company in Silicon Valley that began operations in 2005 manufacturing microelectromechanical systems.  It had between 50 and 70 employees during the time of Mr. Assaderaghi's employment.  Of those employees, approximately 20 reported to Mr. Assaderaghi.

[*4] II.     Securities Transactions

Mr. Assaderaghi began buying and selling securities in 1994.  In 1995 he began trading options.  His trading increased from fewer than 100 trades in 2005 to 535 trades in 2008.[6]  He made 180 trades in 2009.  Of those trades, 214 in 2008 and 34 in 2009 were trades of the same security during the same market day (same-day trades).[7]  Thus, 40% of Mr. Assaderaghi's trades were same-day trades in 2008 and 19% were same-day trades in 2009.[8]

During 2008 and 2009 Mr. Assaderaghi traded through an investment account that he maintained at Fidelity Brokerage (Fidelity).  He traded on a margin account with Fidelity, and his trades included security sales, call and put options, and short sales.  To execute his trades he used a software program called Fidelity Active Trader Pro (Active Trader Pro).  He installed and used Active Trader Pro on both his work and home computers.

---

[6]Mr. Assaderaghi estimated that he made 600 trades in 2007.

[7]The purchase and sale of the same security during the same market day is also known as a "round trip" day trade.  Mr. Assaderaghi's 214 same-day trades in 2008 and 34 same-day trades in 2009 are the equivalent of 107 and 17 round trip trades in 2008 and 2009, respectively.

[8]The parties disagree on the holding period for Mr. Assaderaghi's trades that were not same-day trades.  See infra pp. 17-18.

**[*5]**  Mr. Assaderaghi executed trades on 154 days in 2008 and 94 days in 2009.[9] More than half of the 535 trades made in 2008 were executed in January, June, and July.  He traded on fewer than 10 days in the months of February, August, and October 2008 and on fewer than 10 days in each month from January through June 2009.  Mr. Assaderaghi made zero trades in February 2009.

Mr. Assaderaghi generally monitored and traded between 20 and 30 different stocks and options.  To analyze market trends he researched 9-day and 26-day market indicators and used technical tools such as stock option pricing, moving average convergence divergence, and exponential moving averages and looked for oversold and overbought conditions.[10]

---

[9]Petitioners contend that Mr. Assaderaghi executed trades on 156 days in 2008 and 102 days in 2009.  Petitioners make no citation of the record to support their contentions regarding Mr. Assaderaghi's frequency of trading, see Rule 151(e)(3), and we cannot find any persuasive evidence in the record to support petitioners' contentions.

[10]Mr. Assaderaghi did not record or log his time trading securities.  He testified, however, that he spent a significant amount of time each workday and approximately 15 hours each weekend trading, studying, and analyzing the market by, among other things, reading the Wall Street Journal and watching market analysis on television.  We do not find Mr. Assaderaghi's claims regarding his time spent trading credible, particularly in the light of his work commitments at SiTime.  Nevertheless, even if Mr. Assaderaghi's estimate of his time spent trading was credible and substantiated, it would not alter our conclusion that he was not in the trade or business of trading securities within the meaning of sec. 162(a).

**[*6]** III.    Petitioners' Tax Reporting and the Notice of Deficiency

Petitioners reported their gains and losses from Mr. Assaderaghi's securities transactions as capital gains and losses on each of their 1994 through 2006 Federal income tax returns.  In 2008 petitioners engaged Leo Rosi, a certified public accountant, to prepare their 2007 Federal income tax return.  Mr. Rosi subsequently prepared petitioners' 2008 and 2009 Federal income tax returns and an amended return for 2006.  In January 2008 before filing petitioners' 2007 Federal income tax return, Mr. Assaderaghi emailed Mr. Rosi to inquire about declaring trader status and using the mark-to-market method of accounting.  Mr. Rosi did not respond to Mr. Assaderaghi's inquiry.

Mr. Rosi lacked expertise and experience in filing income tax returns for securities traders and was unfamiliar with how to report mark-to-market accounting.  Beginning in 2007 and without making a mark-to-market election, petitioners reported their gains and losses from Mr. Assaderaghi's securities transactions as ordinary income and loss on a Schedule C, Profit or Loss From Business, attached to their Form 1040, U.S. Individual Income Tax Return.[11]

---

[11]Petitioners also filed a 2006 Form 1040X, Amended U.S. Individual Income Tax Return, to amend their original 2006 return and report their security losses as ordinary losses on Schedule C.

[*7]   Petitioners filed Forms 1040 for 2008 and 2009.[12]  Petitioners reported gross receipts from securities trading of $2,659,696 and $349,991 for 2008 and 2009, respectively.  They claimed deductions for business losses on their Schedules C from the sale of securities of $374,008 and $19,289 for 2008 and 2009, respectively.[13]  Petitioners described their "Principal business or profession" on each Schedule C as "Securities Trader".

Petitioners did not file a section 475(f) mark-to-market election with their 2007, 2008, or 2009 Form 1040.  Indeed, Mr. Rosi and Mr. Assaderaghi first learned of the requirements of section 475(f) in 2011 during respondent's audit of petitioners' returns.  Subsequently petitioners filed an amended Form 1040X for 2007 and attached a "protective" mark-to-market election pursuant to section 475(f).  On January 4, 2012, respondent issued to petitioners the notice of deficiency.  Respondent determined that Mr. Assaderaghi was not a trader and that petitioners had sustained short-term and long-term securities losses for 2008 of

[12]Petitioners reported wage income on Forms 1040 of $704,601 and $297,869 for 2008 and 2009, respectively.

[13]Mr. Rosi prepared and filed petitioners' income tax returns using Schedule C in a manner similar to how he analyzed and prepared returns for other client business activity.

**[*8]** $260,394 and $59,322, respectively, and short-term and long-term securities

losses for 2009 of $19,766 and $48,139, respectively.

OPINION

I.    Burden of Proof

Ordinarily, the Commissioner's determinations in a notice of deficiency are

presumed correct, and the taxpayer bears the burden of proving that the

determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111,

115 (1933).  The burden of proof shifts to the Commissioner, however, if the

taxpayer produces credible evidence to support the deduction or position, the

taxpayer complied with the substantiation requirements, and the taxpayer

cooperated with the Secretary[14] with regard to all reasonable requests for

information.  Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-

441 (2001).

Petitioners do not assert nor have they proven that they are entitled to a shift

in the burden of proof under section 7491(a)(1).  Accordingly, petitioners bear the

burden of proof with respect to respondent's deficiency determination.

---

[14]The term "Secretary" means the Secretary of the Treasury or his delegate.
Sec. 7701(a)(11)(B).

[*9] II.    Purchases and Sales of Securities

A.    Trader or Investor

Section 165 generally allows a deduction for any loss sustained during the taxable year that is not compensated by insurance or otherwise.  However, section 165(f) provides that losses from sales or exchanges of capital assets are allowed only to the extent allowed under sections 1211 and 1212.  Section 1211(b) limits the allowance of such losses to the extent of gains from such sales or exchanges, plus the lower of (1) $3,000 ($1,500 in the case of a married individual filing a separate return) or (2) the excess of such losses over such gains.

Section 1221 defines a capital asset as any property held by the taxpayer, whether or not connected with his trade or business.  Section 1221(a)(1) creates an exception to the definition of a capital asset:

> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *

Accordingly, taxpayers who are not dealers in securities generally recognize capital gain or loss upon the sale or exchange of their securities, rather than ordinary gains or losses.

[*10] If a taxpayer is not a dealer but is engaged in business as a securities trader, section 475(f) allows the taxpayer to elect the mark-to-market method of accounting for securities held in his or her business.[15]  Under the mark-to-market method of accounting a trader generally recognizes at the end of the year ordinary gain or loss on all securities held in the business as if the securities were sold at the end of the year for fair market value.  Sec. 475(d)(3)(A), (f)(1)(A)(i); Knish v. Commissioner, T.C. Memo. 2006-268; Lehrer v. Commissioner, T.C. Memo. 2005-167, aff'd, 279 Fed. Appx. 549 (9th Cir. 2008).  Where the trader has not made a proper election, the losses are treated as capital losses and are deductible only to the extent of capital gains plus $3,000.  Secs. 165(a), (c), (f), 1211(b)(1); Knish v. Commissioner, T.C. Memo. 2006-268.

Accordingly, the proper taxation of gains and losses from a taxpayer's securities activity depends on whether he or she is a dealer,[16] a trader, or an investor.  See Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989),

---

[15]On February 16, 1999, the Internal Revenue Service published Rev. Proc. 99-17, 1999-1 C.B. 503 (sec. 6 superseded by Rev. Proc. 99-49, 1999-2 C.B. 725, which was clarified, modified, amplified, and superseded by Rev. Proc. 2002-9, 2002-1 C.B. 327).  During the years at issue Rev. Proc. 99-17, supra, as modified, provided the exclusive procedure for traders in securities to make an election to use the mark-to-market method of accounting under sec. 475(f).

[16]Neither party asserts that Mr. Assaderaghi was a dealer in securities during the years at issue.

**[*11]** aff'g in part, rev'g in part on another issue and remanding T.C. Memo. 1988-264; King v. Commissioner, 89 T.C. 445, 458-459 (1987). Petitioners contend that Mr. Assaderaghi was a trader in 2008 and 2009, while respondent contends he was an investor.

Generally, traders are engaged in the trade or business of selling securities for their own account. See King v. Commissioner, 89 T.C. at 457-458. Although investors also buy and sell securities for their own account, they are not considered to be in the trade or business of selling securities. See Kay v. Commissioner, T.C. Memo. 2011-159; Arberg v. Commissioner, T.C. Memo. 2007-244. Unlike an investor's expenses, a trader's expenses are deducted in determining adjusted gross income rather than being reported as itemized expenses. See, e.g., Kay v. Commissioner, T.C. Memo. 2011-159. Whether a taxpayer's activities constitute a trade or business is a question of fact. See Higgins v. Commissioner, 312 U.S. 212, 217 (1941).

In distinguishing a trader from an investor, courts consider the following nonexclusive factors: (1) the taxpayer's intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's securities transactions. See Purvis v. Commissioner, 530 F.2d 1332, 1334 (9th Cir. 1976), aff'g T.C. Memo. 1974-164. Indeed, a taxpayer's trading

**[\*12]** activity must be "frequent, regular, and continuous to be considered part of a trade or business. \* \* \* Sporadic trading does not constitute a trade or business." Boatner v. Commissioner, T.C. Memo. 1997-379, aff'd without published opinion, 164 F.3d 629 (9th Cir. 1998).  The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has distinguished traders from investors by stating that "'[i]n a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short term basis.'", Purvis v. Commissioner, 530 F.2d at 1334 (quoting Liang v. Commissioner, 23 T.C. 1040, 1043 (1955)).  Investors generally derive profit from interest payments, dividends, and capital appreciation of securities.  Estate of Yaeger v. Commissioner, 889 F.2d at 33.  Traders, on the other hand, buy and sell securities with reasonable frequency with the purpose of catching the swings in the daily market movements and profiting on a short-term basis.  Id.

A taxpayer's trading activities constitute a trade or business within the meaning of section 162(a) where both of the following requirements are satisfied: (1) the taxpayer's trading is substantial, and (2) the taxpayer seeks to catch the swings in the daily market movements and to profit from those short-term changes rather than to profit from the long-term holding of investments.  See, e.g., Mayer

[*13] v. Commissioner, T.C. Memo. 1994-209.  In determining whether a taxpayer's trading activity is substantial, we consider the number of trades executed in a year, the amount of money involved in those trades, and the number of days on which trades were executed.  See Nelson v. Commissioner, T.C. Memo. 2013-259; Endicott v. Commissioner, T.C. Memo. 2013-199.

With respect to the number of trades executed each year and the amount of money involved in the trades, Mr. Assaderaghi executed 535 trades in 2008 and 180 trades in 2009.  He had gross receipts from securities sales in 2008 of $2,659,696 and in 2009 of $349,991.

In Nelson, there were 535 trades executed on the taxpayer's investment account during the tax year.  The taxpayer failed to meet her burden of establishing how many of those 535 trades were executed by her and not a third party with access to the account.  Nevertheless, we stated that even if the taxpayer executed all 535 trades, her trading activity was not substantial.[17]  In Endicott, we held that 204 trades and 303 trades were not substantial and that 1,543 trades were substantial.  See also Van der Lee v. Commissioner, T.C.

_____

[17]The taxpayer in Nelson v. Commissioner, T.C. Memo. 2013-259, made purchases of approximately $32.5 million and sales of approximately $32.9 million during the tax year.  We acknowledged that the purchase and sale amounts were considerable, but stated that "those amounts are not determinative of whether petitioner's securities trading activity was substantial".  Id.

**[*14]** Memo. 2011-234 (holding that 189 trades were not substantial), aff'd, 501 Fed. Appx. 30 (2d Cir. 2012); Kay v. Commissioner, T.C. Memo. 2011-159 (holding that 313 trades were not substantial); Holsinger v. Commissioner, T.C. Memo. 2008-191 (finding 289 trades with aggregate sales of $754,277 in one year, and 372 trades in a subsequent year, were not substantial); cf. Mayer v. Commissioner, T.C. Memo. 1994-209 (holding that 1,136 trades with gross proceeds of nearly $15 million in one year were substantial). We conclude that Mr. Assaderaghi's total number of trades and the amount of money involved in those trades during 2008 and 2009 were not substantial.

Mr. Assaderaghi also did not trade with sufficient frequency to qualify as a trader. "In the cases in which taxpayers have been held to be traders in securities, the number and frequency of transactions indicated that they were engaged in market transactions almost daily for a substantial and continuous period, generally exceeding a single taxable year; and those activities constituted the taxpayers' sole or primary income-producing activity." Chen v. Commissioner, T.C. Memo. 2004-132, 2004 WL 1194625, at *4 (citing Levin v. United States, 597 F.2d 760 (Ct. Cl. 1979), and Fuld v. Commissioner, 139 F.2d 465 (2d Cir. 1943), aff'g 44 B.T.A. 1268 (1941)). Conversely, where the taxpayer's daily trading activities covered only a portion of the year and securities trading was not the sole or even

- 15 -

**[\*15]** primary income-producing activity, trader status was denied. See id. (citing

Paoli v. Commissioner, T.C. Memo. 1991-351). Indeed, daily trading in securities

for a portion of the taxable year may be reasonably characterized as "sporadic"

rather than "frequent, regular, and continuous", and therefore insufficient to

achieve trader status. Id. (citing Boatner v. Commissioner, T.C. Memo. 1997-237,

and Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987)).

Mr. Assaderaghi executed trades on 154 days in 2008 and 94 days in 2009.

In Holsinger, we held that executing trades on 110 days was not frequent,

continuous, or regular enough to constitute a trade or business. Moreover, of the

535 trades in 2008, more than half occurred during the months of January, June,

and July. See, e.g., Paoli v. Commissioner, T.C. Memo. 1991-351 (finding that

the taxpayers did not prove their securities trading was sufficiently regular and

continuous in part because 40% of their yearly sales were made during a one-

month period). Mr. Assaderaghi traded on fewer than 10 days in the months of

February, August, and October 2008. In 2009 he made trades on fewer than 10

days in each month from January through June, including zero trades in February

2009. See Endicott v. Commissioner, T.C. Memo. 2013-199 (stating that low

frequency trading months indicate that the taxpayer's trading activity is not regular

and continuous); see also Nelson v. Commissioner, T.C. Memo. 2013-259

[*16] (holding that executing 95 out of 535 trades during a one-week period and not making any trades during eight separate seven-day periods was not regular and continuous). We conclude that the number of days on which and the frequency with which Mr. Assaderaghi executed trades do not evidence the frequency, continuity, and regularity necessary to constitute a trade or business.[18]

For a taxpayer to be a trader he also must seek to catch the swings in the daily market movements and profit from these short-term changes. Kay v. Commissioner, T.C. Memo. 2011-159 (citing Mayer v. Commissioner, T.C. Memo. 1994-209). To determine whether a taxpayer seeks to catch the swings in the daily market the Court reviews the holding period of the securities. See Estate of Yaeger v. Commissioner, 889 F.2d at 33; Mayer v. Commissioner, T.C. Memo. 1994-209. In Holsinger, we held that the taxpayer did not seek to catch the swings in the daily market because a significant amount of his stock was held for more than 31 days. Similarly, in Kay, we held that the taxpayer was not a trader because most of his stocks were held for over 30 days.

---

[18]Mr. Assaderaghi's employment--and substantial income unrelated to his securities activity--during the years at issue as the vice president of engineering at SiTime also supports a finding that he was not a trader in securities. See Paoli v. Commissioner, T.C. Memo. 1991-351 (finding the taxpayer's management services and substantial service income relevant in concluding that the taxpayer was not a trader in securities).

**[\*17]**  In 2008 Mr. Assaderaghi executed 214, or 40%, of his trades as same-day

trades.  In 2009 he executed 34, or 19%, of his trades as same-day trades.  The

parties disagree on the holding periods for Mr. Assaderaghi's remaining 321

trades in 2008 and 146 trades in 2009.  On the record before us, we find that

petitioners have failed to carry their burden of establishing, see Rule 142(a), and

the record does not otherwise establish, the holding periods for the remaining

securities traded by Mr. Assaderaghi.[19]  As a result, we cannot conclude that Mr.

---

[19]The record contains copies of Mr. Assaderaghi's Fidelity account
statements for 2008 and 2009.  Respondent, relying on the Fidelity account
statements, contends that Mr. Assaderaghi held 60% and 46% of his securities for
more than 30 days in 2008 and 2009, respectively.  Petitioners asserted at trial and
on brief that Mr. Assaderaghi's holding period was less than 30 days for 80% of
his trades in both 2008 and 2009.  Petitioners contend, without providing specific
and detailed support in the record, that respondent erred in his analysis of Mr.
Assaderaghi's holding periods in part because of a misapplication of the wash sale
rule.  Petitioners introduced into evidence a summary statement that Mr.
Assaderaghi created supporting their contention regarding the holding periods.
They did not, however, show in detail what background data was used to create
this summary or specifically how respondent's analysis was inaccurate.

In addition, petitioners attached to their brief a large number of graphs that
they had not offered into evidence.  The graphs purport to explain or establish Mr.
Assaderaghi's holding periods in the securities he sold in 2008 and 2009.
Documents attached to a party's brief are not in evidence, see Rule 143(c), and we
will not consider them, see Godwin v. Commissioner, T.C. Memo. 2003-289,
aff'd, 132 Fed. Appx. 785 (11th Cir. 2005).

[*18] Assaderaghi sought to profit from the swings in the daily market.[20]

On the basis of the foregoing, we conclude that Mr. Assaderaghi's trading activity did not constitute a trade or business in 2008 or 2009. Petitioners are therefore limited to a $3,000 deduction of losses from the purchase and sale of securities under section 1211(b) for each year in issue.[21]

B.      Mark-to-Market Method of Accounting

Respondent contends that regardless of whether Mr. Assaderaghi was a trader in 2008 and 2009, petitioners failed to make a timely mark-to-market election and therefore are not entitled to claim deductions for ordinary losses on their sales of securities. Petitioners contend that they made a deemed election under section 475(f) or, alternatively, are entitled to make a late election under section 301.9100-3, Proced. & Admin. Regs., and Vines v. Commissioner, 126

---

[20]Assuming arguendo that petitioners did establish that Mr. Assaderaghi sought to catch the swings in the daily market movements and to profit from those short-term changes, we would still conclude that he was not in the trade or business of being a securities trader. See Mayer v. Commissioner, T.C. Memo. 1994-209 (holding that a taxpayer's trading activities constitute a trade or business within the meaning of sec. 162(a) where both of the following requirements are satisfied: (1) the taxpayer's trading is substantial and (2) the taxpayer seeks to catch the swings in the daily market movements and to profit from those short-term changes rather than to profit from the long-term holding of investments).

[21]Sec. 1211(b) limits the allowance of capital losses to the extent of capital gains plus $3,000.

**[\*19]** T.C. 279 (2006). Because we conclude that Mr. Assaderaghi's trading activity did not constitute a trade or business in 2008 or 2009, and thus Mr. Assaderaghi is not eligible for a mark-to-market election under section 475(f), see, e.g., Arberg v. Commissioner, 2007 WL 2416230, at \*12 ("Only a trader, and not an investor, is entitled to make a mark-to-market election pursuant to section 475(f)[.]"), we need not address the parties' arguments on this issue.

We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the parties' concessions and the foregoing,

<u>Decision will be entered for respondent as to the deficiencies and for petitioners as to the accuracy-related penalties under section 6662(a)</u>.