RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

LOCAL NO. 499, BOARD OF TRUSTEES OF SHOPMEN'S
PENSION PLAN,

*Plaintiff-Appellee*,

*v.*

ART IRON, INC., AI REAL ESTATE HOLDINGS, LLC, and
ROBERT SCHLATTER (22-3925); MARY SCHLATTER,
dba Catherine DiSalle (22-3926), LLC,

*Defendants-Appellants*.

Nos. 22-3925/3926

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:19-cv-02174—James R. Knepp II, District Judge.

Decided and Filed:  September 26, 2024

Before: BOGGS, COOK, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Jeanne V. Gordon, JEANNE V. GORDON, INC., Mayfield Heights, Ohio, for Appellants in 22-3925.  Matthew O. Hutchinson, HERSHOFF, LUPINO & YAGEL, LLP, Tavernier, Florida, for Appellant in 22-3926.  Nicholas T. Stack, Joseph D. Jakubowski, SHUMAKER, LOOP & KENDRICK, LLP, Toledo, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

BOGGS, Circuit Judge.  Art Iron, Inc. contests whether the district court properly awarded summary judgment to Board of Trustees ("Board") of the Shopmen's Local 499 Pension Plan ("the Plan").  This suit arises from the Board's pursuit of over one million dollars

of withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") from Art Iron, Robert Schlatter, and Mary Schlatter.

Because Art Iron's liability was not disputed, the only issue before the district court was whether Robert Schlatter, Art Iron's sole shareholder at the time of withdrawal, and Mary Schlatter, his wife, were jointly and severally liable for Art Iron's withdrawal liability. The Plan alleged that the Schlatters were each personally liable for Art Iron's withdrawal liability because each ran a trade or business under "common control" with Art Iron.

Mr. Schlatter operated a consulting business as a sole proprietor and under common control with Art Iron. Pursuant to 29 U.S.C. § 1301(b)(1), the district court determined that Robert Schlatter was individually liable for the withdrawal liability. In its reasoning, the district court found that the consulting business was operated under common control with Art Iron and constituted a "trade or business" under 29 U.S.C. § 1301(b)(1).

Additionally, the district court found that Mrs. Schlatter also ran a sole proprietorship at the time of Art Iron's withdrawal from the Plan and was individually liable for the withdrawal liability. Because Robert and Mary Schlatter had a minor son at the time, the district court found that both of their interests in the businesses they ran were also attributable to their son under Treasury Regulation 26 C.F.R. § 1.414(c)-4(b)(6). Therefore, the district court found that there was a group of trades or businesses under common control with Art Iron and granted summary judgment to the Board.

We affirm the district court's judgment as to Robert Schlatter and reverse and remand the district court's grant of summary judgment as to Mary Schlatter.

## I. BACKGROUND

*A. Art Iron & Demand for Withdrawal Liability*

Under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), the Shopmen's Local 499 Pension Plan ("the Plan") is a multi-payer pension plan that covers employees in various aspects of the ironworking industry, including structural, bridge, and ornamental ironworking. Art Iron,

an Ohio Corporation, is a major participating employer in the Plan, which entered into a collective bargaining agreement on September 11, 2015.

In 2017, Art Iron began winding down its business, stopped paying property taxes, and entered a contract to auction off its equipment. Among other uses, the proceeds of this liquidation went to Robert Schlatter, the director of Art Iron.

In July 2018, a federal tax lien was filed against Art Iron's principal place of business in Toledo, Ohio. The property was owned by AI Real Estate Holdings, LLC ("AI Real Estate"), which was later dissolved.

In October 2018, the Board issued a demand for Withdrawal Liability to Art Iron, Robert Schlatter, and AI Real Estate. Because Art Iron had already ceased operations and liquidated its assets, the Board accelerated its liability and demanded payment of $1,185,785. The Demand also contained a statement that it applied "to any and all trades or businesses under common control and control groups of corporations with Art Iron, Inc., AI Real Estate Holdings, LLC and Mr. Schlatter in his personal capacity."

*B. Robert Schlatter*

In 2017, Robert Schlatter was Art Iron's sole shareholder, officer, and director when it withdrew from the Plan and ceased operations. At the time, Robert Schlatter and Mary Schlatter were married, had a minor son, and ran two separate businesses: Robert was a sole proprietor of a consulting business and Mary made and sold jewelry. As a sole proprietor, Robert Schlatter performed consulting work for Art Iron. Art Iron, in addition to paying him a salary and dividend, also paid him a separate consulting fee for his services. From 2013 through 2017, this separate consulting fee was consistently issued to Robert Schlatter by a Form 1099-MISC tax document rather than as wages or otherwise.

In 2017, in a note to his tax preparer, Robert Schlatter confirmed that this income was issued through a 1099-MISC document. Likewise, on his tax returns, Robert Schlatter consistently reported his consulting income from Art Iron as net profits from a sole proprietorship. From 2013 through 2017, Art Iron paid Robert Schlatter for his consulting work

and he did not file any amendments to his tax returns.  Robert Schlatter continued his consulting business after Art Iron ceased operations and withdrew from the Plan.  Thus, from 2013 to 2020—seven consecutive years—Robert Schlatter engaged in and operated his consulting business.

## C.  Mary Schlatter

From 2013 to the end of 2017, when Art Iron withdrew from the plan and ceased operations, Mary Schlatter also made and sold jewelry as a sole proprietor.[1]  Schlatter first began taking jewelry-making classes in the mid-2000s as a "nice mommy break."  She was "hopeful" that she could create and market her jewelry but saw it as "never more than a hobby" because her ability to make jewelry was "really limited" because of her responsibilities as a homemaker.  Schlatter sold her first piece in 2013 and her last piece in 2021.  Schlatter designs her own jewelry and uses a mold to replicate the jewelry for commercial sale.

Between 2013 and 2016, Mary Schlatter consistently documented sales from her jewelry business and categorized the net losses and profits from its operation as a sole proprietorship on her tax returns.  During this time, Mary Schlatter also consistently reported self-employment taxes, and none of the federal tax forms related to her jewelry have been amended.

Mary Schlatter's documented sales fluctuated during this time.  In 2017, the year Art Iron ceased operations and withdrew from the plan, her jewelry made no gross sales and had no expenses, which she noted in her corresponding federal and state tax documentation.  In fact, her only jewelry-related activity in 2017 may have been filing Ohio tax forms.

## D.  Procedural History

In 2019, the Board filed a complaint in the district court.  Subsequently, Art Iron filed a motion to dismiss for failure to state a claim or in the alternative to compel proper notice pursuant to 29 U.S.C. § 1399(b), arguing that the withdrawal liability notice was not ripe, and that the Plan did not provide for an acceleration of withdrawal liability.

---

[1]Mary Schlatter made and sold her jewelry as "Catherine DiSalle LLC."  It was operated as a sole proprietorship and was never registered as a limited-liability company.

After the district court denied the motion to dismiss, Art Iron, Robert Schlatter, and the Board filed cross motions for summary judgment. Notably, Mary Schlatter did not oppose or otherwise file any response to the Board's motion despite being named as an individual defendant. The district court granted summary judgment for the Board against both Robert Schlatter and Mary Schlatter, finding each liable for Art Iron's withdrawal liability. This appeal follows.

## II. STANDARD OF REVIEW

This court reviews a grant or denial of a motion for summary judgment de novo. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). Summary judgment should be granted if, after examining the record and drawing all inferences in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. ANALYSIS

### A. Trades or Business Under Common Control

Section 1301(b)(1) provides that, for ERISA purposes, all employees of trades or businesses that are under common control with an employer signatory to the pension plan shall be treated as employed by a single employer and all such trades or businesses are treated as a single employer. 29 U.S.C. § 1301(b)(1). Under the statute, this means that a trade or business under common control with Art Iron is treated as a single employer with Art Iron. The "primary purpose of the common control provision is to ensure that employers will not circumvent their ERISA and MPPAA obligations by operating through separate entities." *Mason and Dixon Tank Lines, Inc. v. Cent. States, Se. and Sw. Areas Pension Fund*, 852 F.2d 156, 159 (6th Cir. 1988).

Once the liability of the principal employer is established, withdrawal liability extends to any enterprise that is (1) a trade or business and (2) under common control with the withdrawing employer. *Connors v. Incoal, Inc.*, 995 F.2d 245, 249 (D.C. Cir. 1993). For ERISA and MPPAA purposes, "common control" is further defined in 26 U.S.C. § 414. When these conditions are

met, the enterprise is responsible for outstanding liability to the same extent as the withdrawing employer. *Connors*, 995 F.2d at 249.

Here, Robert Schlatter does not challenge the district court's determination that his consulting business qualifies as an enterprise under "common control" with Art Iron. Instead, Schlatter challenges the district court's categorization of his business as a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1). He argues that the district court erred in applying the categorical test in *Pension Benefit Guaranty Corp. v. Findlay Industries, Inc.* to conclude that his consulting business qualified as a "trade or business." 902 F.3d 597 (6th Cir. 2018). Instead, he asks this court to adopt the two-factor test set forth in *Commissioner v. Groetzinger,* 480 U.S. 23, 35 (1987). Robert Schlatter also argues that there is a question of material fact as to whether his director's fees were income, contending that the district court incorrectly concluded that he provided consulting services through a sole proprietorship to Art Iron.

Mary Schlatter also argues that the district court incorrectly concluded that her jewelry activity was a "trade or business" that was under common control with Art Iron. She contends that the district court erred in applying *Findlay* and should instead have applied *Groetzinger*.

## B. *Groetzinger & Findlay*

The district court noted that a "trade or business" has not been expressly defined by ERISA, the applicable regulations, this court, or the Supreme Court. *Loc. No. 499, Bd. of Trs. of Shopmen's Pension Plan v. Art Iron, Inc.*, 2022 WL 4551042, at *3 (N.D. Ohio Sept. 29, 2022). Both *Findlay* and *Groetzinger* provide guidance as to how this court should interpret "trade or business" under ERISA. 29 U.S.C. § 1301(b)(1).

### 1. *Groetzinger*

In *Groetzinger*, the Supreme Court considered whether a full-time gambler was engaged in a "trade or business" for purposes of the Internal Revenue Code. *Groetzinger*, 480 U.S. at 24–27. Under *Groetzinger*, a "trade or business" is interpreted as used in the tax code. *See* 26 U.S.C. §§ 162(a), 62(a)(1). The two-factor, fact-intensive test involved considering (1) the primary purpose of the entity in question and (2) whether that entity's activity is regular and

continuous. *Groetzinger*, 480 U.S. at 35. The primary purpose for engaging in the activity must be for business and profit, and a "sporadic activity, a hobby, or an amusement diversion does not qualify." *Ibid*.

Because the taxpayer in *Groetzinger* spent sixty to eighty hours a week on gambling, the court found a sufficient level of continuity and regularity in his activity to constitute a "trade or business." *Id*. at 25, 35–36. By contrast, another tax case in which the taxpayer arguably spent four hours a day trading stocks over a one-month period but failed to sustain that level of involvement for the rest of the year, did not have the requisite continuity and regularity. *Paoli v. Comm'r*, 62 T.C.M. (CCH) 275 (Tax 1991); *see also Assaderaghi v. Comm'r*, 107 T.C.M. (CCH) 1179 (Tax 2014) (finding insufficient continuity and regularity when the taxpayer made over 700 trades with gross receipts of over $3 million over two years). Likewise, spending twenty to forty-four days a year gambling does not necessarily establish a continuous and regular activity. *Free-Pacheco v. United States*, 117 Fed. Cl. 228, 262, 303 (Fed. Cl. 2014).

Other circuits have also analyzed the "continuity and regularity" requirement stated in *Groetzinger*. A real-estate investor was found to be engaged in a trade or business when he bought and sold over a dozen properties over the course of four years, including leasing three properties and selling two properties in the year of withdrawal. *Cent. States, Se. & Sw. Pension Fund v. Pers., Inc.*, 974 F.2d 789, 794–96 (7th Cir. 1992). Like Robert Schlatter's case, it was also not clear error to find that there was a trade or business when a shareholder received monthly payments for "management fees." *Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d 587, 595 (7th Cir. 2002). By contrast, neither a few hours managing and marketing properties nor maintaining and renting out properties in one's home counts as continuous and regular activity. *UFCW Loc. One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371, 375 (2d. Cir. 2015); *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 643–44 (7th Cir. 2001).

   2.  *Findlay*

In *Findlay*, this court considered whether a trust should be considered a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1). 902 F.3d at 602–05. Specifically, the

*Findlay* court considered if the *Groetzinger* test is the appropriate test to determine whether an entity that owns land and leases it to an entity under common control, is considered a "trade or business" under ERISA and the MPPAA. *Id.* at 606.

The *Findlay* court found that an interpretation of the phrase "trade or business" that focused on the *primary* purpose of the activity was contrary to both the purpose of ERISA and the plain language of 29 U.S.C. § 1301(b)(1). *Id*. at 606–07. Imparting a primary-purpose requirement would "create dangerous incentives [that do] not serve ERISA's purposes." *Id*. at 606. A more appropriate context places the phrase within the "broad idea of commerce," which encompasses "many of the dictionary definitions." *Ibid*.

In *Findlay*, this court noted that some courts have used the *Groetzinger* test to "define the same terms under ERISA" although neither ERISA nor the Supreme Court has defined the phrase in this context. *Id.* at 605. Other courts, however, have "eschewed the *Groetzinger* test when the entity-in-question's activity is leasing property to a company under common control." *Ibid*. Aligning with those other courts, this court adopted a "categorical test" where "any entity that leases property to a commonly controlled company is categorically a trade or business for ERISA purposes." *Id*. at 607.

Notably, the *Findlay* court did not address whether the *Groetzinger* test for what constituted a "trade or business" under 29 U.S.C. § 1301(b)(1) was appropriate in a withdrawal-liability context of ERISA other than as to the treatment of leasing property. *See Findlay*, 902 F.3d at 605–09. However, the court expressed hesitation about expanding the *Groetzinger* test into other contexts, noting the narrow context of which *Groetzinger* was decided and the purposes of ERISA and the MPPAA. *Id*. at 606.

   3.  *Adopting Groetzinger*

Notwithstanding *Findlay*'s apparent reluctance to expand *Groetzinger* into other contexts, we believe that *Groetzinger* is the appropriate test for defining a "trade or business" in this case. The text of ERISA supports looking to the "continuity and regularity" of the activity and whether the individual's "primary purpose for engaging in the activity" was "for income or profit." *Groetzinger*, 480 U.S. at 35–36.

To start, contemporaneous dictionary definitions of "trade" or "business" focused on profit motives and continuity. Trade was considered one's "occupation" or the "business" one "carries on . . . for profit." *Trade*, *Black's Law Dictionary* (4th ed. 1957) (defining "trade" as "[a] line of work or a form of occupation pursued as a business or calling, as for a livelihood or for profit"); *see also Trade*, *Black's Law Dictionary* (5th ed. 1979) (defining "trade" as "[t]he business which a person has learned and which he carries on for procuring subsistence, or for profit"). "Business," similarly, referred to one's "employment, occupation, or profession engaged in for gain or livelihood." *Business*, *Black's Law Dictionary* (4th ed. 1957); *see also* William Little, *The Oxford Universal Dictionary on Historical Principles* 239 (3d ed. 1955) (defining "business" as "[t]rade, commercial transactions or engagements" or "[a] commercial enterprise as a going concern"). One thread connecting these definitions is one's intent to profit from his enterprise. Another thread is that one "carries on" the activity as a "trade" or "profession." Both of these track with *Groetzinger*'s "for income or profit" and "continuity and regularity" factors. 480 U.S. at 35–36.

Further, ERISA's "trades and businesses" provision expressly references the tax code's usage of "trades or businesses[.]" 29 U.S.C. § 1301(b)(1) (citing 26 U.S.C. § 414(c)). Indeed, other circuits have expressly adopted *Groetzinger* as the proper test in this context. *See, e.g., Enivel Props., LLC*, 791 F.3d at 373 ("*Groetzinger* is useful to 'distinguish trades or business from investments, which are not trades or business and thus cannot form a basis for imputing withdrawal liability under § 1301(b)(1).'" (internal citation omitted)); *Connors*, 995 F.2d at 251 ("[T]he Court's construction of 'trade or business' is the most authoritative pronouncement available, and we therefore rely on it, as has at least one panel of the Seventh Circuit."); *Pers., Inc.*, 974 F.2d at 794 ("Although the Groetzinger court considered a provision of the tax code, we find its definition helpful in distinguishing trades or businesses from purely personal activities or investments.").

*Findlay* held that leasing a commonly controlled entity is categorically a trade or business for ERISA purposes. We do not disturb that holding. But according to *Findlay* itself, it adopted the categorical test solely for that lease situation—in large part to avoid a conflict with those circuits that adopted *Groetzinger* for other ERISA contexts. *Findlay*, 902 F.3d at 608. Here, we

agree with our sister circuits that *Groetzinger* is the "most authoritative pronouncement available" for defining a "trade or business" under ERISA outside of the *Findlay* context.  *See Connors*, 995 F.2d at 251.

## C.  Robert Schlatter's Consulting Business

Here, the district court applied *Findlay's* categorical test to Robert Schlatter's consulting business, finding that it was a "trade or business."  Robert Schlatter contends that the district court incorrectly applied *Findlay*, encouraging this court to adopt *Groetzinger*.  While we agree with Schlatter and adopt *Groetzinger* as the correct test, under either test his consulting business would be a "trade or business."

### 1.  Trade or Business

Under *Groetzinger*, Robert Schlatter's consulting business is a "trade or business."  The first factor, that the "taxpayer's primary purpose for engaging in the activity must be for income or profit," is met.  *See Groetzinger*, 480 U.S. at 35.  As the primary shareholder of Art Iron, Robert Schlatter controlled how his income was allocated to him.  He chose to receive income from Art Iron in three different ways, as (1) employee wages, (2) shareholder distributions, and (3) independent-contractor fees for his consulting services.  There is nothing in the record that suggests Schlatter received these payments for any purpose other than as income or profit.

The second factor, whether an activity is regular and continuous, is also met.  According to the record, Robert Schlatter provided consulting services to Art Iron for several consecutive years including the year that Art Iron withdrew from the Plan.  This regularity and continuity make Schlatter's consulting business a "trade or business" under *Groetzinger*.  *See ibid*.

Even under *Findlay*, Robert Schlatter's consulting business is a "trade or business."  As noted by the district court, Robert Schlatter ran his consulting business for several years, provided his consulting services to Art Iron and, in turn, Art Iron paid Robert Schlatter a separate consulting fee for his work.  Art Iron, the signatory employer, had a direct business relationship and received a direct benefit from Robert Schlatter's consulting business.  The two enterprises were so intertwined that even under the test put forth in *Findlay*, involving the leasing activities

of a non-signatory-controlled group member and the signatory member, it is clear Robert Schlatter's activity constitutes a "trade or business". *See* 902 F.3d at 607

The district court's application of "trade or business" also aligns with the *Findlay* court's interpretation that the phrase should be read in the broad context of commerce. *See id*. at 606. By operating and engaging in his consulting business with Art Iron in return for a regular fee for his consulting services, Robert Schlatter engaged in "the broad idea of commerce." *See id.* at 605–07.

### 2. *Questions of Material Fact*

Robert Schlatter argues that questions of material fact exist as to whether his fees were income or wages. Schlatter contends that the district court incorrectly examined his own tax return and tax documents to determine that he was the sole proprietor of his consulting business. However, Schlatter's argument fails to account for the fact that tax returns are considered sworn statements, and well-established precedent dictates that contradicting sworn statements does not create a genuine issue of fact.

As the Supreme Court observed, the lower federal courts have "held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement" that contradicts his or her current litigating position without first explaining the contradiction or attempting to resolve the discrepancy. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (collecting cases).

When parties "tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Tax returns, as correctly noted by the district court, are sworn statements. 26 U.S.C. § 6065.

Robert Schlatter claimed his income as being from "self-employment" on his tax forms and intended that his consulting income be reported on a 1099-MISC and not as wage income for

several consecutive years.  Additionally, the record demonstrates that Art Iron also paid Schlatter a separate fee for his consulting services and issued a Form 1099-MISC documenting Schlatter's income for several consecutive years.  Moreover, Schlatter noted to his tax preparer that this income was intended to be issued through a 1099-MISC rather than wages or any other type of income.  Schlatter also consistently reported this consulting income from Art Iron on his tax forms as "Net Profit" from a "Sole Proprietorship" and listed the principal business, profession, or services provided as "consulting." Thus, the record demonstrates that Schlatter was clearly the sole proprietor of his consulting business.

Schlatter appears to challenge his own sworn statements given to the IRS, arguing that a U.S. Tax Court decision, *Burbach v. Commissioner*, holds that, where no facts are presented that renumeration was paid for directorial services, such renumeration is properly classified as wages received as an officer-employee.  2019 WL 1090332, at *9 (T.C.M., Mar. 7, 2019).

Under *Burbach*, Schlatter contends that his receipt of director's income from Art Iron should also be characterized as wages received as an officer-employee of Art Iron because there is no "evidence of specific directorial services" that he performed in the record.  *See ibid*. Therefore, he contends, as Art Iron's director at the time of withdrawal, Schlatter would not be engaged in a trade or business.  Likewise, because a control group would not exist under this framework, Schlatter argues that there is no need to determine whether there was common control between his consulting business and Art Iron.  Thus, as both an individual and as an entity, Schlatter contends that he is not liable for the withdrawal fees.

Schlatter's argument is irrelevant.  Although Schlatter received some income that was compensation for service as a director of Art Iron, he also received separate compensation for his work as an officer and employee of his consulting service.  Simply stated, Schlatter cannot reimagine his own sworn statements to create a genuine issue of material fact on appeal as to his operation of his consulting service.

## D.  *Mary Schlatter's Jewelry Activity*

On appeal, Mary Schlatter challenges the district court's determination that her jewelry activity as a sole proprietorship was a "trade or business" under "common control" with Art Iron

at the time of withdrawal, arguing that the district court should have applied the test put forth in *Groetzinger* instead of *Findlay*.   Under *Groetzinger*, Schlatter's jewelry enterprise was not operated with regularity and continuity.   As such, it was not a "trade or business" under common control with Art Iron.

Despite being named as an individual defendant by the Board in its motion for summary judgment, Mary Schlatter did not file a cross-motion or raise any issue in opposition of the Board's motion. As a result, the district court granted summary judgment.   The issue, therefore, is whether she forfeited her right to raise arguments on appeal.   Under Sixth Circuit caselaw, the answer is no.   Even if a party did not preserve any arguments before the district court, it may still attack the district court's grant of summary judgment on appeal.

### 1. Appealability

We have held that district courts "cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).   The "failure to respond *at all* at summary judgment is not necessarily fatal to a plaintiff's claims." *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 534 (6th Cir. 2018) (citing *Carver*, 946 F.2d at 455; Fed. R. Civ. P. 56(c), (e)).   The movant "always bears the burden of demonstrating the absence of a genuine issue as to a material fact" and bears this burden "regardless if an adverse party fails to respond." *Carver*, 946 F.2d at 454–55.   If the adverse party bears the burden of proof and does not present evidence, there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Because a movant must always make an initial showing, "the non-movant can still argue on appeal that the movant failed to meet his burden in the first instance." *Hanson*, 736 F. App'x at 535.

We have reviewed a grant of summary judgment de novo despite the non-movant's failure to respond below.   In *Cacevic v. City of Hazel Park*, the plaintiffs failed to file a timely substantive response to the defendants' motion for summary judgment.   226 F.3d 483, 486 (6th Cir. 2000).   The plaintiffs later provided evidence, after the district court's ruling.   While this court refused to consider the later-provided evidence on appeal, we still reviewed the grant of summary judgment de novo. *Id*. at 491.   Likewise, in *Thurmond v. County of Wayne*, the plaintiff

"did not respond to the merits" of a motion for summary judgment but requested more discovery instead.  447 F. App'x 643, 646 (6th Cir. 2011).  This court "determine[d] de novo whether the defendants met their initial Rule 56 burden."  *Id*. at 648 (quoting *Cacevic*, 226 F.3d at 491).  When a plaintiff also failed to respond to a motion for summary judgment in *Yeschick v. Mineta*, this court again undertook de novo review of "whether the facts as presented by the movant establish[ed] that the movant met its initial burden under Rule 56."  675 F.3d 622, 632 (6th Cir. 2012) (citing *Cacevic*, 226 F.3d at 491).

Some cases appear to point the other way.  In *Turney v. Catholic Health Initiatives*, this court said that a plaintiff's failure to respond "defaulted" the question of whether there was a genuine issue of material fact on her claim.  35 F. App'x 166, 168 (6th Cir. 2002).  Yet, the court only affirmed after "reviewing the evidence that was submitted."  *Ibid*.  In *Rugiero v. Nationstar Mortgage*, this court held that "silence was sufficient justification" for granting summary judgment.  580 F. App'x 376, 378 (6th Cir. 2014).  In its reasoning, the court quoted *Everson v. Leis*, stating "[t]he failure to present *any* evidence to counter a *well-supported* motion for summary judgment alone is grounds for granting the motion."  *Ibid*. (emphasis added) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  This language is fully consistent with requiring a motion for summary judgment to be adequately supported.  These cases do not contradict the caselaw and proposition that a non-movant can appeal the grant of summary judgment despite failing to respond below.  A non-movant who does not respond to a motion for summary judgment cannot point to new facts on appeal, but the non-movant may still attack the district court's reasoning, arguing that the party moving for summary judgment failed to carry its burden.

This position is also consistent with precedent concerning motions to dismiss and forfeiture in general.  We have recently held that a plaintiff who fails to respond to a motion to dismiss may "challenge the district court's grounds for dismissing his complaint" on appeal.  *Heyward v. Cooper*, 88 F.4th 648, 655 (6th Cir. 2023).  In such a case, the "defendant will be on notice of the contents of the complaint and of the district court's basis for dismissing it, so the plaintiff may properly challenge the basis of the court's decision."  *Ibid*.

Mary Schlatter, a defendant, failed to respond to the motion for summary judgment from Art Iron, the plaintiff. But she can still appeal the judgment. The plaintiff bore the burden of establishing that she owned and operated a "trade or business" that was under common control with Art Iron. While Mary Schlatter cannot point to new facts, she can argue that the plaintiff's cited facts do not entitle it to judgment as a matter of law. As such, we turn to this question and review it de novo.

### 2. *Trade or Business*

Art Iron has failed to carry its burden to establish as a matter of law that the creation and sale of Mary Schlatter's jewelry was sufficiently continuous and regular as to be considered a "trade or business" in 2017, the year of Art Iron's withdrawal from the Plan. According to Art Iron's motion for summary judgment, Schlatter filed federal tax returns between 2013 and 2016 but made no sales at all or reported any income or expenses related to her jewelry in 2017.

Under *Groetzinger's* continuous for-profit test, Mary Schlatter's jewelry enterprise is not a trade or business. Instead of a continuous stream of income, Schlatter had no income in 2017. Her minimal level of engagement in her jewelry enterprise in 2017 falls well below what other cases have required for establishing whether continuity and regularity in a trade or business existed. Schlatter neither engaged in the sort of continuous and regular business as the ongoing real estate or management activities in *Personnel* or *Neiman* nor did she come close to the twenty days of gambling in *Free-Pacheco* or the hundreds of trades in *Assaderaghi*. *See Pers., Inc.*, 974 F.2d at 794–96; *Free-Pacheco*, 117 Fed. Cl. at 262, 303; *Neiman*, 285 F.3d at 595; *Assaderaghi*, 107 T.C.M. (CCH) at 1179. As in *Paoli*, Schlatter failed to sustain a consistent level of involvement for the entire year in which Art Iron withdrew from the Plan. *See* 62 T.C.M. (CCH) at 275. Accordingly, Schlatter was not making and selling jewelry with continuity and regularity in 2017, and therefore did not operate a "trade or business" that could be under common control with Art Iron. So Mary Schlatter is not personally liable for Art Iron's withdrawal liability.

## IV. CONCLUSION

For the above reasons, we affirm the district court's judgment as to Robert Schlatter's claim and reverse the grant of summary judgment with respect to Mary Schlatter.